Filed 9/4/13  J.P. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| J.P., | |
| Petitioner, | E059060 |
| v. | (Super.Ct.No. J247367) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Christopher Marshall, Judge.  Dismissed.

Dennis Moore for Petitioner.

No appearance for Respondent.

Jean-Rene Basle, County Counsel and Jamila Bayati, Deputy County Counsel, for Real Party in Interest.

The petitioner J.P. is the mother (mother) of A.D., born in April 2009. Mother challenges the juvenile court's orders of June 26, 2013, finding true the allegation that she caused the death of A.D.'s 14-month-old brother through abuse or neglect (Welf. & Inst. Code, § 300, subd. (f))[1] and denying her reunification services for the same reason (§ 361.5, subd. (b)(4)). As a matter of judicial economy, we decline to address the merits of mother's petition because she does not challenge a number of allegations that were also found true. Further, even if we were to resolve this petition in mother's favor, it would not realistically provide any tangible benefit to her with regard to this or future child welfare proceedings. This is because the appalling nature of the unchallenged findings that she abused and neglected A.D.'s brother would prevent any such benefit from accruing to mother, even were we to reverse the finding that this abuse and neglect caused the toddler's death. Therefore we dismiss the writ petition.

FACTS AND PROCEDURE

Previous Dependency and First Sibling Death

A.D. was previously a dependent of the court from 2010 to 2012. The circumstances of the first dependency are as follows. In June 2010, San Bernardino County Children and Family Services (CFS) received a referral alleging that A.D.'s three-year-old half brother C.P. was being physically abused and neglected. Specifically, the referral alleged that mother's boyfriend, who fathered A.D. and mother's two subsequent children, but not C.P., had smacked C.P. in the chest and caused him to hit his

---

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

2

head on a table and suffer a large gash to his head. At that time, one-year-old A.D. and his one-month-old sister were living in the home and were considered at-risk. CFS had trouble locating and interviewing mother and A.D.'s father, apparently because they moved residences.

CFS made contact with mother and A.D.'s father in July 2010, after paramedics were called to the home. A.D.'s infant sister was found unconscious and unresponsive in her bed, with blood coming from her nose and mouth. She was later pronounced dead. The infant had three healing rib fractures. The parents claimed the infant died from Sudden Infant Death Syndrome. The official cause of death listed in the autopsy report was "undetermined." At that point, A.D. and C.P. were removed from the home and a dependency case ensued, based on C.P.'s head injury. A.D. was placed with a relative and the parents received reunification services. C.P. was placed with his father and did not return to the home. A.D.'s father was convicted of abusing C.P.

In October 2011, CFS was called by hospital staff when T.P.[2] was born to mother testing positive for marijuana. T.P. was in respiratory distress and spent 12 days in the neonatal intensive care unit. T.P. was eventually sent home with the parents and an apnea monitor, despite the open dependency case on A.D. No dependency case was opened for T.P.

In March 2012, A.D. was returned home on family maintenance, and his dependency was dismissed in October 2012.

---

[2] CFS identifies this child as "T.D." in its responsive brief, but we follow the record and call him "T.P."

3

Current Dependency and Second Sibling Death

On December 17, 2012, CFS was notified that paramedics had been called to the home that three-year-old A.D. and mother shared with A.D.'s father and T.P. T.P., who was 14 months old, was found dead on the bathroom floor. Paramedics noted that by the time they arrived, T.P. was "ice cold to the touch," and rigor mortis had set in. T.P. had bruising around his abdomen, neck and genitals, and appeared to be extremely malnourished. It was later determined that T.P. weighed only *12 pounds*. Paramedics and law enforcement personnel told the responding social worker that the toddler must have "suffered a great deal prior to his death." The first responders had difficulty navigating around the house because every room was filled with clutter and debris, and the home was littered with dog feces and rotting food. Three large Pit Bull dogs lived inside the home, which smelled overpoweringly of urine. Mother acknowledged that the dogs are aggressive and would bite.

On December 20, 2012, CFS filed a section 300 petition regarding A.D. The detention hearing was held on December 21, 2012. The contested jurisdiction and disposition hearing was held over five days in May and June 2013. Both parents testified, as did the doctor who performed the autopsy on T.P. and another doctor who is an expert in the area of child abuse. At the conclusion of the hearing, the juvenile court declared A.D. a dependent child, ordered no reunification services and no visitation and set a section 366.26 hearing for October 24, 2013. This writ proceeding followed. On August 5, 2013, counsel for A.D.'s father filed a "no issues" letter brief with this court.

4

Mother argues the juvenile court erred when it found true the allegation that she caused the death of A.D.'s sibling T.P. under section 300, subdivision (f), and denied her reunification services under section 361.5, subdivision (b)(4) because she had caused the death of A.D.'s sibling.  Specifically, mother argues substantial evidence does not support the conclusion that the injuries to T.P. and the emaciated state of his body were the cause of his death.

Real party in interest CFS argues this court need not address the merits of mother's petition because mother does not challenge the other bases for finding jurisdiction, i.e., the allegations found true under section 300, subdivisions (a), (b) and (j), respectively serious physical harm, failure to protect and abuse of sibling.  Neither does mother challenge the three other bases for denying reunification services under section 361.5, subdivisions (b)(3), (6) and (12), respectively re-abuse after having been returned home from a previous dependency, severe sexual abuse or severe physical abuse, and conviction of a violent felony.

Mother urges this court to review the merits of her petition because an adverse finding that she caused the death of A.D.'s sibling by abuse or neglect could prejudice her in future child dependency proceedings, both with any future children mother may have and in case mother chooses to file a motion in the current case under section 388 to modify the court's orders for no visitation and no reunification, based on changed circumstances.  Mother sums up the practical effect of this court failing to address the merits of mother's petition as "The Trial Court's findings and rulings in this case can

5

always be used to never allow Mother to parent another child again." As discussed below, this statement is equally true of the abuse of sibling (subd. (j)) basis for jurisdiction that mother does not challenge, and so any resolution of this petition in mother's favor would have no tangible effect on mother's legal status.

The focus of dependency proceedings is to protect minor children. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) To acquire jurisdiction over a child, a juvenile court need only find that the conduct of either parent has triggered any of the ten subdivisions of section 300, (a) through (j). (*Ibid.*) Because of this, "an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*Ibid.*) Although mother asks this court to exercise its discretion to review her substantial evidence claims because it could in theory have an effect on any subsequent child welfare proceedings for future children, or on a posited section 388 petition in this proceeding, we decline to do so. We arrive at this decision because we do not see what practical effect even a reversal of the subdivision (f)—death of sibling—finding would have on mother and A.D. "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id.* at p. 1490.) As CFS points out, even if we were to undo the "subdivision (f)" finding that mother caused the death of A.D.'s younger brother by abuse and/or neglect, mother would still be left with the "subdivision (j)" finding that:

> While in the care and custody of the child's mother . . . the child's younger brother . . . sustained the following injuries . . . :

6

a. Severe bruising around his abdomen, limbs, genital area and neck.
b. Extreme malnourishment.
c. A distended abdomen.
d. Skeletal upper and lower extremities.

Therefore, this placed the child . . . at risk of serious physical harm.

In other words, even if mother could persuade this court that the expert testimony about the above state of T.P.'s body did not establish a causal link to the toddler's death, we just cannot see how success in this petition would have a "practical, tangible effect" on mother's legal status. In any future child welfare proceedings, the record will still reflect that mother caused or allowed A.D.'s brother to suffer from these horrific injuries and conditions. As a practical matter the details of the "j" finding alone preclude the realistic possibility that child welfare officials or any juvenile court would ever, in her own words "allow Mother to parent another child again." Resolving this petition in mother's favor would not change that, and so as a matter of judicial economy we decline to address the petition's merits.

### DISPOSITION

The petition is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

RICHLI
J.

7